IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL DEFELICE, | § | |
| | § | No. 30, 2014 |
| Respondent-Below, | § | |
| Appellant, | § | Court Below:  Family Court of |
| | § | the State of Delaware in and for |
| v. | § | New Castle County |
| | § | |
| DIVISION OF FAMILY | § | File No. 12-09-04TN |
| SERVICES, | § | CPI No. 12-31402 |
| | § | |
| Petitioner-Below, | § | |
| Appellee. | § | |

Submitted:   June 30, 2014
Decided:     September 9, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

## O R D E R

This 9th day of September 2014, upon consideration of the appellant's brief filed under Supreme Court Rule 26.1 ("Rule 26.1"), his attorney's motion to withdraw, and the responses of the appellee and the guardian *ad litem*, it appears to the Court that:

(1)    The appellant, Daniel DeFelice ("DeFelice"), filed this appeal from the Family Court's order of December 23, 2013, terminating his parental rights in his child, Samantha, born on October 1, 2011.[1]

---

[1] Having previously assigned a pseudonym to the appellant, the Court hereby assigns a pseudonym to the child.  Del. Supr. Ct. R. 7(d).

Samantha's mother's parental rights were terminated on June 4, 2013, and are not at issue in this appeal.

(2) On appeal, DeFelice's counsel ("Counsel") has filed an opening brief and a motion to withdraw under Rule 26.1. Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. DeFelice responded to Counsel's presentation with a written submission that raises several claims. The appellee, Division of Family Services ("DFS"), and the guardian *ad litem* have responded to the position taken by Counsel as well as the issues raised by DeFelice and have moved to affirm the judgment of the Family Court.

(3) On October 11, 2011, DFS was granted emergency custody of ten-day old Samantha after filing a petition alleging that she was dependent and neglected in her parents' care. At the October 18, 2011, preliminary protective hearing, and at each of the mandated review hearings that followed, the Family Court found that Samantha was dependent, and that DFS was making reasonable efforts to reunify the family.[2]

---

[2] *See* Del. Fam. Ct. Civ. R. 209 (governing the determination of reasonable efforts to prevent a child's removal from the home); Del. Fam. Ct. Civ. R. 212-217 (governing review hearings in child dependency and neglect proceedings). In this case, the adjudicatory hearing was waived. A dispositional hearing took place on December 9, 2011. Review hearings were held on March 15 and July 2, 2012, and a permanency hearing was held on October 22, 2012.

(4)     On December 9, 2011, DeFelice entered into a reunification case plan with DFS.[3]  The case plan described "the services to be provided by [DFS] . . . to correct the conditions which necessitated state intervention"[4] and DeFelice's "duties and responsibilities . . . to correct the identified problems . . . to achieve [reunification]."[5]

(5)     Under the case plan, DeFelice was required to "obtain and maintain" appropriate housing and employment, have weekly visitation with Samantha, attend her medical appointments while she was in state care, take a parenting course, get both substance abuse and mental health evaluations, and follow through with any recommended treatment.  Also, DeFelice, who pled guilty in 1997 to two counts of Unlawful Sexual Penetration in the Third Degree ("USP"),[6] was required under the case plan (as he was under his Superior Court sentence) to comply with the sex offender registration requirements mandated by law.[7]

---

[3] *See* Del. Fam. Ct. Civ. R. 220 (governing contents of case plans).

[4] *Id.* at (1).

[5] *Id.* at (2).

[6] The Court has not identified the corresponding Superior Court case in a continuing effort to protect the confidentiality of the appellant and, by extension, the child.  *See supra* note 1.

[7] The February 5, 1999 sentence order provided that "[t]he provisions of 11 *Del. C.* 4120 and 4336, sex offender registration and community notification, apply to this case."  *See generally* Del. Code Ann. tit. 11, ch. 41, subch. III (Sex Offender Management and Public Safety).

3

(6)     On September 18, 2012, DFS filed a petition to terminate DeFelice's parental rights on the ground that he had failed "to plan adequately for [Samantha's] physical needs or mental and emotional health and development."[8]   At an October 22, 2012, permanency hearing, more than a year after Samantha was taken into state care, the Family Court changed the goal of the case plan from reunification to termination after finding that DeFelice was incarcerated, had not had contact with DFS since April 2012, was not in a position to care for Samantha, and had failed to complete the case plan for reunification.

(7)     The Family Court heard the termination of parental rights petition in five hearings held between June and December 2013.   DeFelice was incarcerated throughout the pendency of the hearings on a charge, to which he later pled guilty, of having failed to register as a sex offender.[9] The Court notes that twice during the course of the termination hearings DeFelice consented to the termination of his parental rights, but each time he revoked his consent within the allowable time.

---

[8] 13 *Del. C.* § 1103(a)(5).

[9] 11 *Del. C.* § 4120(k).  The Court has not identified the corresponding Superior Court case in a continuing effort to protect the confidentiality of the appellant and, by extension, the child.  *See supra* note 1.

(8)  At the first hearing on June 4, 2013, a DFS treatment worker assigned to the case described her efforts to locate relatives who could serve as placement options for Samantha.  The treatment worker testified that she looked into DeFelice's sisters as possible resources, but that neither was able to care for Samantha.  A DFS permanency worker assigned to the case testified that Samantha had successfully transitioned from her initial foster home placement to a placement with maternal relatives in February 2013. The permanency worker further testified that the relatives had been approved as an adoptive resource, and that Samantha was doing "very well" and was "very bonded" to them.[10]

(9)  At a hearing on August 6, 2013, the DFS treatment worker testified that DeFelice had not obtained housing and employment, had not completed a substance abuse evaluation or followed through on mental health treatment, and had not complied with the requirements to register as a sex offender.  Also, a foster home treatment coordinator assigned to the case testified that DeFelice had not attended any of Samantha's medical appointments despite having notice of them, and that his weekly visitation with Samantha, which was sporadic in February and March 2012, had stopped completely in April 2012.

---

[10] Hr'g tr. at 21-22 (June 4, 2013).

5

(10)   At the next hearing on November 19, 2013, DeFelice testified that DFS had not referred him for services as required by the case plan and had not investigated all family members as possible placements for Samantha.  Also, DeFelice testified that he had not seen Samantha in over a year due to his medical issues and because he had deliberately avoided DFS to keep from getting arrested for failing to register as a sex offender.

(11)   At the next hearing, scheduled for December 17, 2013, one of DeFelice's sisters was supposed to testify that she and other paternal relatives were possible placement options for Samantha.  Unfortunately, neither Counsel nor DeFelice's sister appeared for the hearing because they mistakenly thought the hearing was scheduled for the following day.  To resolve the problem, the Family Court recessed the December 17, 2013, hearing without taking testimony, and rescheduled the hearing for the following day.  Ultimately, although DeFelice's sister showed up for the rescheduled hearing and spoke to both the DFS treatment worker and Counsel, she left unexpectedly before testifying.

(12)   The Family Court must undertake a two-step analysis before deciding to terminate parental rights.[11]  The Family Court must first identify

---

[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

6

a statutory basis for termination[12] and second, determine what is in the best interest of the child.[13] Also, when the statutory basis for termination is failure to plan[14] there must be proof of at least one additional statutory condition[15] and proof that DFS made *bona fide* reasonable efforts to preserve the family unit.[16] The petitioner must prove by clear and convincing evidence that there is a statutory basis for termination, and that the best interest analysis favors termination.[17]

(13) By an order dated December 23, 2013, the Family Court terminated DeFelice's parental rights on the ground that he had failed to plan for Samantha's needs and that termination was in Samantha's best interest. The Family Court further found, by clear and convincing evidence, that DeFelice was a statutorily defined sex offender[18] who had failed to rebut the

---

[12] *Id*. at 537. *See* 13 *Del. C.* § 1103(a) (listing grounds for termination of parental rights).

[13] *Shepherd v. Clemens*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing best interest factors).

[14] 13 *Del. C.* § 1103(a)(5).

[15] *See id.* at a., b. (listing additional conditions).

[16] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

[17] *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[18] 13 *Del. C.* § 723A.

statutory presumption against a sex offender having unsupervised visitation, custody, or residential placement of a child.[19]

(14) This Court's review of a Family Court order terminating parental rights requires that we consider both the legal rulings made by the Family Court and its factual findings.[20] As to rulings of law, our review is *de novo*.[21] As to determinations of fact, we conduct a limited review of the Family Court's factual findings to ensure that they are sufficiently supported by the record and are not clearly wrong.[22] We do not disturb inferences and deductions that are supported by the record.[23]

(15) In this case, having carefully reviewed the parties' positions on appeal and the Family Court record, we conclude that the Family Court committed no error in determining that there was clear and convincing evidence supporting the termination of DeFelice's parental rights on the basis of his failure to plan and because termination was in Samantha's best interest. The record supports the Family Court's determination that DeFelice did not complete the major aspects of his case plan despite DFS'

---

[19] 13 *Del. C.* § 724A.

[20] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010).

[21] *Id*. at 440.

[22] *Id*.

[23] *Id*.

reasonable efforts at reunification, and that Samantha, now a healthy almost-three year old, is well-adjusted in her current home with a family who wishes to adopt her.

(16) In his written submission, DeFelice contends that DFS did not make adequate or reasonable efforts at reunification because the treatment worker did not fully investigate all paternal family members willing to provide care for Samantha and did not refer him to services as required under the case plan. Also, DeFelice asks the Court to consider that he did not have counsel at the December 17, 2013 hearing, and that, when sentencing him on the 1997 USP convictions, the Superior Court did not prohibit him from having custody of his own child.

(17) We have considered DeFelice's claims but conclude they are without merit. Contrary to DeFelice's claims on appeal, the record reflects that the DFS treatment worker and permanency worker attempted on numerous occasions and in various ways to assist DeFelice in meeting his responsibilities under the case plan, including making appropriate referrals. The record amply supports the Family Court's determination that DFS had proven by clear and convincing evidence that DeFelice did not take advantage of necessary services and otherwise failed to plan. The record further reflects that the DFS treatment worker contacted all of the relatives

identified by DeFelice as possible placements for Samantha and for which he provided correct contact information. None of them were well positioned or willing to take care of Samantha, who was ultimately placed with a family member related to her mother. Thus, the Family Court's determination that DFS had established by clear and convincing evidence that it made reasonable efforts to reunify the family was also well supported by the record.

(18) DeFelice is correct that Counsel failed to show up for the December 17, 2013 hearing, but he fails to mention that the Family Court recessed the hearing until the following day and does not show how he was prejudiced. Moreover, assuming that DeFelice can demonstrate that the Superior Court sentencing order did not prohibit him from having custody of his own child, the existence of that order is only *one of six* conditions[24] that DeFelice must meet to successfully rebut the statutory presumption that prevents him from having custody of his child. [25] Because the record evidence easily supports the Family Court's determination that DeFelice has failed to rebut the presumption by demonstrating all of the necessary

---

[24] *See* 13 *Del. C.* § 724A(b)(1)-(6) (listing six conditions that must be met to overcome the rebuttable presumption that no sex offender will be awarded custody, have unsupervised visitation or reside with a child).

[25] *Id.* at (b)(1) (providing, in the first of six conditions, that the presumption may be overcome if "[t]here is not a criminal sentencing order prohibiting same").

conditions, the fact that the Superior Court sentencing order did not bar DeFelice from having custody of Samantha, does not, by itself, provide any basis to upset the Family Court's decision.

(19) Having carefully reviewed the parties' positions and the record on appeal, the Court can discern no abuse of discretion in the Family Court's factual findings and no error in the court's application of the law to the facts supporting terminating DeFelice's parental rights. We therefore conclude that DeFelice's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that DeFelice could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the motions to affirm filed by DFS and the guardian *ad litem* are GRANTED. The judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*
Chief Justice

11